E3sdsecc
                          Conference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    SECURITIES AND EXCHANGE
     COMMISSION Application to
4    Compel Compliance with Federal
     Agency Investigative
5    Subpoenas,

6                Applicant,                    New York, N.Y.

7          v.                                  14 MC 00061 P1

8    CHARLES RIEL III  a/k/a "Chuck
     Riel" and REINVEST LLC,
9
                 Respondents.
10
     ------------------------------x
11
                                               March 28, 2014
12                                             3:10 p.m.

13   Before:

14                     HON. RONNIE ABRAMS,

15                                             District Judge

16                          APPEARANCES

17   UNITED STATES SECURITIES AND EXCHANGE COMMISSION
          Attorneys for Applicant
18   BY:  CHRISTOPHER M. CASTANO
          PREETHI KRISHNAMURTHY
19
     CHARLES RIEL III
20        Respondent Pro Se

21

22

23

24

25

E3sdsecc
                              Conference

1              THE CLERK:  In the matter of Securities and Exchange

2    Commission versus Riel III, also known as Chuck Riel, et al.,

3    docket number 14 Miscellaneous 61.

4              Counsel, please state your names for the record.

5              MR. CASTANO:  Christopher Castano for applicant

6    Securities and Exchange Commission.

7              Good afternoon, your Honor.

8              THE COURT:  Good afternoon.

9              MS. KRISHNAMURTHY:  Good afternoon, your Honor.

10   Preethi Krishnamurthy for the applicant as well.

11             THE COURT:  Good afternoon.

12             MR. REIL:  Good afternoon.  My name is Chuck Riel.

13             THE COURT:  Good afternoon, Mr. Riel.

14             Mr. Riel, I'm happy to hear you out on this, but

15   reviewing your correspondence with the SEC, I see that you have

16   raised a number of issues for not complying with the

17   subpoena -- that you are concerned your responses won't be

18   complete, that you've taken down what you perceive is any

19   misleading content on the website and that you don't fall

20   within the securities laws -- but none of these reasons allows

21   you to resist compliance.

22             I am happy to hear you out but --

23             MR. REIL:  Well, obviously, your Honor, I am not -- I

24   have no experience in the law.

25             THE COURT:  OK.  Just as background, you know, we are

E3sdsecc
                            Conference

1    here on an order to show cause.  So on March 13th I signed an

2    Order that required you to appear today and show cause why you

3    shouldn't be ordered to produce documents and appear for

4    testimony, as called for by the Commission's January 31, 2014

5    subpoena.  Right?  So that's why we're here today.

6          My March 13th Order also required respondent REinvest

7    to appear today and show cause why it should not be ordered to

8    produce documents as called for by the Commission's

9    January 13th subpoena.

10         So you are here representing yourself, and are you

11   representing REinvest as well?

12         MR. REIL:  I am REinvest.

13         THE COURT:  You are REinvest?

14         MR. REIL:  Yes.

15         THE COURT:  So as I said, I am happy to hear you out,

16   but to obtain an order enforcing an administrative subpoena,

17   the Commission only needs to show a few things.  I will tell

18   you what they are -- that the investigation will be conducted

19   pursuant to a legitimate purpose, that the inquiry may be

20   relevant to that purpose, that the information sought that

21   they're seeking is not already within their possession, within

22   the Commissioner's possession, and that the administrative

23   steps required have been followed.  So that is the law.

24         I think that they have established each of those

25   elements based on the submissions I have.  But this is an

E3sdsecc
                    Conference

 1   opportunity for you to show cause, to explain why you haven't

 2   complied with the subpoenas and whether or not you intend to

 3   comply with them going forward.

 4          MR. REIL:  OK.

 5          THE COURT:  Does that make sense?

 6          MR. REIL:  That makes sense, your Honor.

 7          I put together some things here that I would like you

 8   to go through.

 9          THE COURT:  OK.  It would have been nice -- you

10   understand the order to show cause has dates by which you were

11   to submit any documents?  But I will listen to you now.

12          MR. REIL:  Your Honor, I will look at them now.  Like

13   I said, your Honor, I have no legal experience.

14          Unfortunately, I am a small business owner.  I do not

15   have the money to get experienced counsel to address this

16   issue.

17          THE COURT:  As I said, I am happy to look at those

18   documents today.  Do you have a copy for the government

19   lawyers?

20          MR. REIL:  I have a copy for you and I have a copy

21   here for myself.

22          THE COURT:  OK.  Well, are you asking that they not be

23   permitted to look at what you have?

24          MR. REIL:  No.  No.  No.  No.  What I've actually done

25   is I've tried to make this as simple and literal as I could,

E3sdsecc
                          Conference

1   and I simply went through the material that they have here and

2   I simply indexed what they had there and my responses here.

3          I have to tell you, I have got some real concerns in

4   that I've already expressed so many times that I don't

5   understand -- I don't understand how this thing could even be

6   possible based on what we have done, based on what the real

7   situation is.  There is no one anywhere that has ever filed a

8   complaint about us.  I have documented here, this was started

9   as a side -- this is not our primary business.  It was started

10  as a side project by my dad.  He passed away a couple of years

11  ago and he asked that I keep that running for him for three

12  years, which this year was that.  And I explained all that in

13  the letters to the Commission.

14         So as of this date, we've removed the website.  We

15  have nothing to do with those activities.  Everything relating

16  to it is actually defunct.  This whole thing is a concern over

17  five -- five -- private loan arrangements based on a basic,

18  simple promissory note.  There is no equity.  There is no

19  ownership attached to anything.  We've never had anything to do

20  with any kind of a financial security.

21         So I am just totally perplexed how this situation

22  could even exist.

23         THE COURT:  OK.

24         MR. REIL:  And my concern is not only what I just

25  stated but my concern is that it seems not only myself and

E3sdsecc
                         Conference

 1    REinvest being the same, but what about the five individuals

 2    that we have these private agreements with?  It simply makes no

 3    sense.

 4           My understanding of the Commission, as a regulatory

 5    commission, they're set up to ensure that specific kinds of

 6    compliance are kept and met within the securities industry.  We

 7    have nothing to do with any of that.  We never have.

 8           And not to mention -- no, I should mention -- on the

 9    14th of March, which I also have in here, I received a letter

10    from a Mr. Vitulano's office.  And in that letter -- it was

11    overnighted to me -- it said that the Commission has concluded

12    with their investigation and inquiry.  There would be nothing

13    more required from me.  OK.  Three hours later I get overnights

14    from the Commission that says court papers were filed.  And for

15    three to four days later UPS has come back every single day

16    with an order -- an order from UPS to get back that delivery.

17           Now, I'm concerned about that, first off.  And I'm

18    also concerned about the fact that every letter, every

19    communication that I've ever received from the Commission, I

20    have tried to very respectfully communicate.  I didn't ignore

21    anything.  Unfortunately, I didn't do that clear enough where

22    they had a good enough understanding where they trusted in what

23    I said.

24           But the bottom line is I communicated to every single

25    letter that I received from them.  I've talked to a couple of

E3sdsecc
Conference

1    people from Mr. Vitulano's office.  I'm not sure if I'm saying

2    that name right but it's Steve.  So I've tried to communicate

3    to the point where I felt it made sense.  But at this point it

4    looks like my rights and the individual rights of the people

5    involved -- and there's five -- no one is addressing that

6    issue.  I'm getting double-talk communication from the

7    Commission.  On one hand, it's been closed and there is nothing

8    more required of me.  On the other hand, papers have now been

9    filed.

10          THE COURT:  OK.  I am happy to hear from the

11   Commission.  Just to be clear, though, this proceeding is not

12   about the merits of whether or not you or REinvest did anything

13   wrong.  That's not what this is about.  I have a very limited

14   role here today.  They served subpoenas for documents and for

15   testimony and they want to enforce that, meaning they want to

16   make sure that you comply with those subpoenas.  That's all

17   this proceeding is about.  Right?  I just want to make sure you

18   understand that.  OK?

19          MR. REIL:  All right.  I understand that.

20          I can't help but feel like I'm being treated like a

21   criminal.  I have never had any issues before --

22          THE COURT:  I certainly don't mean to treat you like a

23   criminal.

24          MR. REIL:  I don't mean you.  I just mean the whole

25   way that this thing has come together.  And when you really

E3sdsecc
                              Conference

 1   look at what it's based on, it seems that it is all based on

 2   certain things that were put on a website that when it was

 3   brought to my attention it was removed.  The site doesn't exist

 4   any longer.  It was only in existence for about a three-year

 5   period.  We're talking about a total amount of money that

 6   probably -- this makes no sense to me.

 7              THE COURT:  OK.  I understand your position.

 8              MR. REIL:  So I don't -- I don't understand how and

 9   why I could be demanded to comply with this kind of thing when

10   it shows total disregard for the individuals involved and their

11   own personal rights.

12              THE COURT:  Well, as I said earlier, I read you what

13   is the standard under the law for enforcing an administrative

14   subpoena, which is what this is.

15              Based on the Declaration of Christopher Castano and

16   the other supporting documents that I have here that you've

17   seen, I do believe that the Commission has established each of

18   the elements to justify this administrative subpoena.  So the

19   investigation, in my view, is being conducted for a legitimate

20   purpose, to determine whether respondents violated the

21   securities laws on their websites.  The answer to that

22   ultimately may be no, but it's a legitimate purpose.  OK?  So

23   that's the first prong of this standard.

24              Information about the identity of the website's

25   investors, its communications with them, and its use of their

E3sdsecc
                          Conference

1    funds is relevant to that inquiry.  Again, I am just going

2    through this standard that I am required to look at under the

3    law.

4              And, finally, the Commission has shown that it does

5    not already have this information in its possession and that it

6    served a subpoena in the fashion that it was required to, in

7    accordance with the administrative steps required.

8              So that is the standard under the law of what they

9    need to show.  I think they've shown that in these documents.

10   And so the subpoenas are requesting the various documents no

11   later than April 11th, and requesting or directing you to

12   appear for testimony on April 18th.  That's what the subpoena

13   is asking for.

14             If the documents that you have here today -- and I am

15   happy to take a look at them, but if they are in your view

16   responsive to the subpoena, that may be a manner by which you

17   are responding to the subpoena.  I don't know if they are or

18   they aren't; I haven't looked at them.  But maybe you are

19   willing to comply with the subpoena.

20             I mean, are you willing to show up for testimony on

21   that date and provide documents responsive to their request?

22             MR. REIL:  I don't know specifically what you are

23   speaking of, "documents."

24             THE COURT:  OK.  Can you get out a copy of the

25   subpoena and read it into the record, please?

E3sdsecc
                              Conference

1              What tab is it at?

2              MR. CASTANO:  5.

3              THE COURT:  5?

4              MR. CASTANO:  For the Court, your Honor, the

5    Commission is seeking all documents concerning any securities

6    or investment opportunities offered by or through REinvest,

7    including, without limitation --

8              THE COURT:  Just slow down a little bit for the court

9    reporter.  Thank you.

10             MR. CASTANO:  Including, without limitation,

11   brochures, communications with prospective or actual investors

12   or members, including past investors or members,

13   correspondence, and offering memorandum.

14             2.  A list of all investors who have invested funds in

15   programs offered by REinvest, including the name, address,

16   phone number, and investment amount for each investor, as well

17   as the name of the program in which he or she invested.  All

18   documents concerning the full name, address and contact

19   information of all of the clients who provided recent

20   testimonials on the 150PercentReturn.com website.

21             3.  All documents concerning bank statements for all

22   accounts maintained by REinvest.

23             4.  All documents concerning agreements signed by

24   investors in any investment program offered by REinvest,

25   including, but not limited to, investors' subscriptions to the

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

E3sdsecc
                          Conference
1    150PercentReturn Program.

2              THE COURT:  There are six more items.  Do you want an

3    extra copy of this, Mr. Riel?  Do you have a copy of this

4    subpoena?

5              MR. REIL:  Yes, I do.

6              THE COURT:  OK.  I just want to make sure.  So the

7    section, when you asked about what documents are they

8    requesting, it is towards the bottom of page 2.  It is B,

9    right?  And so it is 1 through 10.  It is all of those items

10   that they are requesting.  It's Tab 5 and it's a document

11   entitled "Subpoena Attachment."

12             MR. CASTANO:  Your Honor.

13             THE COURT:  Yes.

14             MR. CASTANO:  Also, there is another subpoena.  It's

15   Tab 11.  The subpoenas are essentially identical.

16             THE COURT:  OK.  So there is one to you and one to the

17   company.

18             MR. CASTANO:  Correct, your Honor.

19             THE COURT:  So those are the documents they are

20   requesting.  You can work with the Commission.  If you are not

21   sure about what they are looking for, if there is some

22   confusion on your part, you can talk to them about that.

23             Again, the proceeding here today is just to enforce

24   this.  It is just to make sure you comply with it, that you

25   show up for testimony and you give the documents that they're

E3sdsecc
                          Conference

 1   asking for, to the extent you have them.  And so what this

 2   Order to Show Cause that I signed -- I know it is legal lingo

 3   and feel free to ask any questions, as you have, but it is just

 4   directing you and the company REinvest to produce these

 5   documents that are responsive on that list that are within your

 6   possession, control or custody by April 11th, and then appear

 7   for testimony before the Commission -- and there is the address

 8   of the Commission -- on April 18th.

 9            And then it says what you are supposed to do if you

10   don't have the documents in your possession, custody or

11   control; that you submit a sworn statement to the Commission

12   describing the efforts you made to locate the responsive

13   documents and the results of those efforts.  Maybe you will

14   have some responsive documents and not others, and you can, you

15   know, write a statement as to what you have or don't have.  I

16   am going to leave that to you.

17            And then the Order says that in the event that you or

18   REinvest don't produce the documents or statements by those

19   dates that I told you -- Right? -- April 11th and April 18th,

20   then the Commission will have established a prima facie case of

21   civil contempt against REinvest and against you.

22            I mean, that is the gist.  So the gist is if you don't

23   do this, if you don't produce the documents or if you don't

24   show up when you are supposed to show up for testimony, that

25   you can be found in civil contempt.  I think we all want to

E3sdsecc
                         Conference

1    avoid that.  That is not the goal here.  The goal here is just

2    to give you the opportunity to make sure you understand what's

3    being asked of you and to make sure that you understand that if

4    you don't comply with the subpoena, that you could be in

5    contempt of court.  So that's --

6              MR. REIL:  What does that actually mean, your Honor?

7              THE COURT:  There would be an order of contempt

8    against you for failing to comply.  There are various things

9    that can happen as a result of contempt.

10             I don't know what the Commission normally requests in

11   a situation like this.

12             MS. KRISHNAMURTHY:  I did this just a few weeks ago,

13   your Honor.

14             THE COURT:  Could you just speak into the mic, please.

15             MS. KRISHNAMURTHY:  Sure.

16             THE COURT:  Thank you.

17             MS. KRISHNAMURTHY:  There are various kinds of

18   remedies.  We typically ask for a fine to be assessed, usually

19   on a per day basis until the person has complied with the

20   subpoena, and in some cases we've also asked for the Court to

21   arrest the contemnor until he complies or at least until he

22   shows up in court.

23             THE COURT:  So all those things can happen if you

24   don't comply, and that's why we are here.

25             MR. REIL:  So, your Honor, I'm being treated just as

E3sdsecc
                          Conference

1    if I'm convicted of a crime and I am a criminal.

2              THE COURT:  You are not being treated as if you have

3    been convicted of a crime.

4              MR. REIL:  I most certainly am.

5              THE COURT:  No, you are not.  You are being told that

6    you have to comply with the Order, and if you don't comply with

7    the Order then various things can happen, including the

8    possibility of being sent to jail for failing to comply with a

9    Court Order.

10             But the Order is requesting -- and I am going to sign

11   an Order requiring you to comply with the subpoena, because, as

12   I said, I think the Commission has met the standard required.

13   You have the opportunity to comply, to show up for testimony,

14   to produce the documents.

15             If you don't have the documents in your possession or

16   control, you can write a statement, as I noted a minute ago,

17   explaining what efforts you have made to locate the responsive

18   documents.  So that's what you are being asked to do, and

19   that's what you are required to do under the law.

20             And then it's going to be left to you as to whether or

21   not you follow my Order to do that, to comply with the

22   subpoena.

23             (Pause)

24             Does that make sense?

25             MR. REIL:  Well, I suppose as much as it can, yes.

E3sdsecc
                              Conference

 1          THE COURT:  OK.  All right.  So as I stated earlier --

 2          MR. REIL:  I understand, your Honor.  I don't mean to

 3   cut you off.  I understand what you just said to me.

 4          But I still, I have -- I don't know, I must be a

 5   pretty ignorant person or something, because I have no, no

 6   concept of how the United States Commission -- the United

 7   States Securities and Exchange Commission would not only be

 8   concerned but would put the resources into something as

 9   ridiculous as this.  We are talking about five private loans

10   that have nothing to do with the securities at all.

11          And, again, I know you are going to look at me and

12   you're going to say, Mr. Riel, that has nothing to do with the

13   proceeding.  But every single document that they've sent me, it

14   says this is a nonpublic investigation, number one.

15          This is all over the Internet.  I had family members

16   call me two days after and say to me they were so upset and

17   wanted know what this was about.  I asked them what are talking

18   about.  And they said they were doing searches on Google, and

19   it is up on Google, which is bad enough, but they click the

20   active link and the documents go right into their PC.

21          Now, what's wrong with that?  Every single document

22   here from the Commission, from day one, says this is absolutely

23   nonpublic and I have not been convicted of anything and they

24   are not accusing me of anything.  Is that how you treat people

25   that you haven't accused of something?

E3sdsecc
                         Conference

1          THE COURT:  Well, let me ask the Commission.  I mean,

2    was it nonpublic until you sought to enforce the subpoena?

3          MR. CASTANO:  That is correct, your Honor.

4          THE COURT:  So, basically, it wasn't public until you

5    didn't comply with what they're asking for, until you didn't

6    comply with the Court -- with the subpoena, excuse me, and then

7    they had to come to court and say we need to get an order to

8    enforce the subpoena.  And that's why it became public, because

9    you didn't comply with the subpoena.  That's what the

10   Commission is saying.  So nothing had been public prior to the

11   time that you didn't respond to the subpoena.

12         MR. REIL:  How did it get on the Internet?

13         THE COURT:  I don't know how it got on the Internet.

14   Everything in court is public.  So we're in a public courtroom.

15   All the filings are part of the court record.  Everything that

16   happens in this courtroom, with very small exceptions, is

17   public.

18         So at the point that you didn't respond to the

19   subpoena they came to court, and at the point they came to

20   court that Order that I signed became public.  How it got on

21   the Internet I don't know specifically, but that's why it's

22   public.

23         MR. REIL:  Fine.  And, your Honor, how could I receive

24   a document signed by Mr. Steven Vitulano telling me that the

25   inquiry/investigation has been closed, concluded, and that

E3sdsecc
                        Conference

 1   they're no longer going to be asking me for any documents?

 2               THE COURT:  Do you want to answer that?

 3               MR. CASTANO:  Yes, your Honor.

 4               On March 13, 2014, without the Division of

 5   Enforcement's knowledge, members of the New York office's

 6   Broker-Dealer Inspection Program, and I understand your Honor

 7   knows that there are distinctions between different divisions

 8   at the SEC.  The Broker-Dealer Inspection Program sent Mr. Riel

 9   a letter, which isn't the most clear letter, admittedly,

10   indicating that its voluntary inquiry had been concluded.  Now,

11   that's the Broker-Dealer Inspection Program, that's not the

12   SEC's Division of Enforcement, which we are here for and which

13   we issued subpoenas.  So it is a different division.

14               THE COURT:  So it is understandable that Mr. Riel

15   would be confused.

16               MR. CASTANO:  Correct, your Honor.

17               THE COURT:  Mr. Riel, it is understandable that you

18   were confused about that, that you got these mixed messages

19   from different divisions.  It is totally understandable.  But

20   we still are where we are, which is that this division of the

21   SEC has subpoenaed these documents and your testimony.

22               Nothing is happening today.  You are not going to jail

23   today.  You are not being fined today.  You are here to be

24   given the opportunity to comply.  To the extent that there is

25   confusion about whether the investigation was still open or

E3sdsecc
                      Conference

1   not, now I think the confusion has been cleared up.  But,

2   again, it is understandable why you would have been confused.

3            So now it is up to you.  I am going to sign this

4   Order.

5            Do you have a proposed order for me?

6            MR. CASTANO:  Your Honor, we do.  We would like to

7   make one edit to it.

8            We made a mistake to it.  So we would like to have an

9   opportunity to go back, make a correction, and send it to your

10  Honor.

11           THE COURT:  Go ahead.  That is fine.

12           So I'm going to sign the proposed order allowing them

13  to enforce the subpoena, and then it is going to be up to you,

14  Mr. Riel, if you are going to comply with it.  I hope you do.

15  I don't want to hold you in contempt.  But that's what's going

16  to happen next, right?

17           So there are these dates in the Order, the

18  April 11th date and the April 18th date, and it is going to be

19  up to you to decide whether to comply with the subpoena.  And

20  as I said, there could be very serious consequences if you

21  don't.

22           You know, of course, you are permitted to hire

23  counsel, if you would like to do so.

24           MR. REIL:  I can't afford to hire counsel.

25           THE COURT:  Well, maybe you can try and obtain pro

E3sdsecc
                              Conference

1   bono counsel.  You know, there are lawyers who represent people

2   pro bono, which means free of cost.  You can call the Bar

3   Association.  You can look into those opportunities online,

4   "probono.net."  There are various organizations.  I don't know

5   if you will be able to find someone.  There is no right to

6   counsel in a civil case.  But in any event, you can make those

7   efforts if you would like to do that.

8           So I am going to sign this Order, and I expect you to

9   comply because I really don't want to hold you in contempt.

10          Do you understand that?

11          MR. REIL:  Yes, your Honor.  I do.

12          THE COURT:  Anything else?

13          MR. CASTANO:  Your Honor, just one other thing.  In

14  the proposed order you signed, Mr. Riel is to appear before the

15  Commission for his testimony on Friday, April 18th.

16          THE COURT:  Is that Good Friday?

17          MR. CASTANO:  That's Good Friday, your Honor.

18          When we send you the proposed order, we are going to

19  propose Monday, April 21st, if that is convenient with your

20  Honor.

21          THE COURT:  OK.  Mr. Riel, would it make a difference

22  to you if we changed these dates a little bit, the date to

23  comply?  Basically, you know, I had said here you have to show

24  me why you can't comply on these dates.  Because we didn't want

25  to make testimony on the day of Good Friday, we are going to

E3sdsecc
Conference

1  move the date to Monday.  But if you told me, for example, that

2  there was a date that was more convenient for you, maybe you

3  could work that out with the SEC lawyers.

4          MR. REIL:  You do realize that I'm 300 miles from

5  here?

6          THE COURT:  I do.

7          MR. REIL:  Do you realize it is a 10-hour drive here

8  and back?

9          THE COURT:  OK.  Well, look, I encourage you to talk

10 to the Commission's lawyers.  Maybe there is a date that's more

11 convenient for you.  And if you can work it out with them, I

12 think that that's best for everybody.

13          This was not -- the dates aren't chosen to

14 inconvenience you.  So I'm encouraging you to talk to them to

15 make it more convenient.

16          So I am going to sign an order, unless you tell me

17 there is a particular date that is more convenient -- and we

18 can talk about that now -- I will sign an order that says you

19 have to produce these documents by April 11th and appear for

20 testimony on April 21st, which is a Monday and it is not Good

21 Friday.  That's why we are switching that date.

22          MR. REIL:  Obviously, you know, a couple of months

23 would be much better than a few days from now.

24          THE COURT:  Do you have any flexibility on the dates?

25          MR. CASTANO:  Your Honor, we have a little bit of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E3sdsecc
                              Conference

 1  flexibility, but we issued the subpoena to REinvest --

 2          THE COURT:  Back in January.

 3          MR. CASTANO:  January and, again, to Mr. Riel back in

 4  January, if not January 31st.  You know, we would prefer --

 5  well, there is certainly a little bit of flexibility and we are

 6  certainly reasonable, you know, extending this out months is

 7  something we don't --

 8          THE COURT:  Why don't you just take a minute.  See if

 9  you can agree on some dates with Mr. Riel.

10          MR. CASTANO:  Sure.  Thank you, your Honor.

11          THE COURT:  And then I will sign off on those dates.

12          MR. REIL:  You are aware -- I know you are aware

13  because I know you have put a lot of effort in your research --

14  you should know where I'm living, you know how long I have

15  lived there.  I am the third generation of our family.  You are

16  not dealing with someone who is going to get up and run and

17  leave their family.

18          MR. CASTANO:  That's not what we are saying.

19          (The parties conferred)

20          THE COURT:  If you can't agree on a date, I am just

21  going to set one.

22          (The parties conferred)

23          THE COURT:  May 1st is a Thursday, if that is what you

24  are asking.  So is May 1st the date for testimony or for

25  documents?

E3sdsecc
                              Conference

1          MR. CASTANO:  Your Honor, May 1st is the day we would

2     propose for Mr. Riel's testimony, and one week prior to

3     May 1st -- two weeks, OK.  At least two weeks prior to

4     Mr. Riel's testimony we would like document production.

5          THE COURT:  OK.  So the documents will be due

6     April 17th, which is a little bit later -- six days later than

7     what was in the Order, and then the testimony will be on

8     May 1st.  And those are the documents I'm going to sign off on.

9     OK?  So you will submit a proposed order to me.

10         Is there anything else we need to discuss?

11         MR. CASTANO:  That's it, your Honor.

12         THE COURT:  OK.

13         MR. CASTANO:  Thank you.

14         THE COURT:  So, Mr. Riel, you understand, again, the

15    possibility of what could happen if you don't comply with the

16    subpoena?

17         MR. REIL:  Yes, your Honor.  I guess I do.  I suppose

18    what you are telling me is that whatever is in here just

19    doesn't matter; is that what you are telling me?

20         THE COURT:  No.  I'm happy to look at it --

21         MR. REIL:  But you've already signed off.  You've

22    already given them the go ahead.

23         THE COURT:  Well, I am still here.  So if you want me

24    to look at the documents -- I don't know what they are -- pass

25    them up and I'll look at them.  I mean, if they are relevant to

E3sdsecc
                          Conference

 1  whether or not you are required to comply with the subpoena, I

 2  am going to consider them.

 3          MR. REIL:  Thank you.

 4          (Handing to the Court)

 5          MR. CASTANO:  Your Honor, I just note for the

 6  record --

 7          THE COURT:  Yes.

 8          MR. CASTANO:  -- that the SEC has not received a copy.

 9          THE COURT:  OK.

10          Mr. Riel, do you want to lend your copy to the

11  Commission for a minute so they can read it while I am reading

12  it?

13          MR. REIL:  Yes.  I see no problem with that.

14          (Handing to Commission counsel)

15          (Pause)

16          THE COURT:  All right.  I have read your submission.

17  I think we've already discussed a number of the issues that you

18  raise here.  I did just want to just inform you about the law

19  in one area.  And that's the point that you make about REinvest

20  being a small privately-held business entity that has nothing

21  to do with financial securities.  I wanted to respond to that

22  just by letting you know that under the law individuals or

23  companies can't contest subpoenas on the ground that their

24  conduct was legal or that the investment vehicles were not

25  securities.

E3sdsecc
                              Conference

1          I am going to just say the names of various cases that

2   stand for that proposition, opinions that have held that.

3   Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 509

4   (1943), which is the citation of the case.  United States v.

5   Construction Products Research, Incorporated, 73 F.3d 464, 470

6   (2d Cir. 1996).  That is the Court of Appeals here in this

7   district.  NLRB v. CCC Associates, Incorporated, 306 F.2d 534,

8   538 (2d Cir. 1962).  And FTC v. Texaco, Incorporated, 555 F.2d

9   862, 879, and that's from the D.C. Circuit in 1997.

10         And a quote from that case which involved the FTC,

11  which is a different entity, says that, "If the parties under

12  investigation could contest substantive issues in an

13  enforcement proceeding when the Agency lacks the information to

14  establish its case, administrative investigations would be

15  foreclosed or at least substantially delayed."

16         You know, the idea behind these cases is that if there

17  ends up being a substantive case down the line, that those

18  issues are appropriately discussed there and not at the time

19  when you are attempting to enforce a subpoena.  So whether or

20  not there was any illegal conduct or whether the investment

21  vehicles were or were not securities is appropriately brought

22  if and when there is a substantive case and not at this early

23  stage where the Commission is just trying to get information.

24  OK?

25         Can I make this part of the record in this case?

E3sdsecc
                              Conference

1             MR. REIL:  Absolutely, your Honor.

2             THE COURT:  OK.  So I will put it on the docket.

3             If you could give Mr. Riel his copy back.

4             MR. REIL:  Thank you.

5             THE COURT:  And, again, I hope and expect you to

6    comply with the subpoena.  You can, as I said, try and obtain a

7    lawyer.  I understand that you may not have money to afford

8    one, but if you want to talk to a lawyer about, you know,

9    whether or not you should take the Fifth Amendment, you know,

10   during your testimony or otherwise, you should try and find an

11   attorney.  And there are various ways, there are bar

12   Associations, there are other entities that try and get people

13   attorneys -- pro bono is what it's called -- which represents

14   them for free, but I am going to leave that to you.  OK?

15            So the Commission will submit the subpoena on

16   Monday -- I'm sorry, the Order, excuse me, the Order with the

17   revised dates that we discussed.

18            MR. CASTANO:  We could send it to you today by email

19   if that is --

20            THE COURT:  That is fine.  It won't be entered into

21   the docket until Monday morning.

22            MR. CASTANO:  Thank you.

23            THE COURT:  OK.  Anything else, Mr. Riel?

24            MR. REIL:  No.  I don't think so, your Honor.

25            THE COURT:  All right.  Thank you.  We are adjourned.